(No. 7128. July 14, 1943.)

STATE OF IDAHO, on the relation of Calvin E. Wright, State Auditor, and Chas. E. Spoor, Commissioner of Law Enforcement, Plaintiff, v. DON HEADRICK, Sheriff of Ada County, and MARGARET GILBERT, Treasurer of Ada County, Defendants.

[139 Pac. (2d) 761.]

Bert H. Miller, Attorney General, and J. R. Smead, Assistant Attorney General, for plaintiff.

James W. Blaine, Prosecuting Attorney for Ada County, and M. Oliver Koelsch, Assistant Prosecuting Attorney for Ada County, for defendants.

V. K. Jeppesen, Prosecuting Attorney for Canyon County; Captain E. M. Sweeley, Prosecuting Attorney for Twin Falls County, and Clarence H. Higer, Prosecuting Attorney for Gem County, amici curiae.

GIVENS, J.—There being divergent and sharply conflicting views as to the legislative intent, correct meaning of, and proper interpretation to be placed upon chap. 142, 1943 S.L., p. 286, chap. 146, p. 291, chap. 147, p. 293, and chap. 171, p. 359, the alternative writ of mandate herein was issued against the defendants, respectively sheriff and treas-

urer of Ada County, requiring them to remit monthly the funds for drivers' licenses collected by the sheriff and deposited in the county treasury, or show cause why they refuse.

Plaintiff contends the amended statutes require the sheriff to act as examiner only when appointed and that the fee is left at 50c and $2, that remittances are to be made monthly by the sheriff through the County Treasurer, and that placing these additional duties on the sheriff does not contravene art. 18, sec. 11, of the Idaho constitution. The defendants, on the other hand, urge there are the following two questions:

"(1) Shall the sheriff collect and transmit through the County Treasurer to the Department of Law Enforcement a fifty cent application or license fee for motor vehicle operator's license and a $2.00 fee for motor vehicle chauffeur's license, and in addition to such application or license fees shall the sheriff collect under chap. 171 an additional sheriff's fee in the sum of fifty cents for receiving the application for a motor vehicle operator's license and a sheriff's fee of $2.00 for receiving an application for a motor vehicle chauffeur's license?

"(2) If the sheriff is obliged under the law to collect and transmit through the County Treasurer to the Department of Law Enforcement a license fee for operator's and chauffeur's licenses, shall the transmittal of such sums be quarterly under the provisions of sec. 7, art. 18 of the constitution of Idaho or shall some other system be followed?"

The amendments are as follows, the parentheses showing deletions and underscorings showing additions:

1943 Session Laws, ch. 146.

"Section 12. APPLICATION FOR LICENSE OR INSTRUCTION PERMIT—(a) Every application for an instruction permit or for an operator's or chauffeur's license shall be made upon a form furnished by the department and shall be verified by the applicant before a person authorized to administer oaths, and officers and employees of the department *and sheriffs and their deputies* are hereby authorized to administer such oaths without charge. Every application for a permit or license shall be accompanied by the required fee, to-wit: Applications for instruction permit, 50c; applications for operator's license, $.50; applica-

tions for chauffeur's license, $2.00, *and such fees shall be transmitted to the department of law enforcement in such manner as may be provided by law."*

"Section 16. EXAMINATION OF APPLICANTS.— (a) The (department) *sheriff* shall examine every applicant for an operator's or chauffeur's license, except as otherwise provided in this section, *or in this Act.* Such examination shall be held in the county where the applicant resides within not more than 10 days from the date application is made. It shall include a test of the applicant's eyesight, his ability to read and understand highway signs regulating, warning, and directing traffic, his knowledge of the traffic laws of this state, and shall include an actual demonstration of ability to exercise ordinary and reasonable control in the operation of a motor vehicle."

"Section 17. COMMISSIONER MAY APPOINT LOCAL EXAMINERS.—The commissioner may appoint as examiners sheriffs, chief of police, or other officials or private citizens whom he deems qualified. Any sheriff (chief of police, or other person accepting appointment as an examiner hereunder and) *conducting examinations for operator's or chauffeur's licenses shall* make such written report of findings and recommendations to the department as it may require."

1943 Session Laws, ch. 148.

*"Section 1. That all moneys or fees which shall be paid to or collected by the sheriff of any county of the State of Idaho for receiving applications for motor vehicle operator's licenses and motor vehicle chauffeur's licenses shall, not later than the end of each and every month, be paid by the treasurer of said county to the Department of Law Enforcement of the State of Idaho."*

Ch. 147, 1943 Session Laws, adds to the duties of the sheriffs:

*"13. Sell operators' and chauffeurs' licenses."*

Ch. 171, 1943 Session Laws, add to list of sheriffs' fees:

*"For receiving application for motor vehicle operator's license* .................................................................$ .50

*"For receiving application for motor vehicle chauffeur's license* ................................................................. 2.00"

Ch. 142, 1943 Session Laws.

"48-302. CHAUFFEUR'S LICENSE—APPLICATION —SUSPENSION UPON CONVICTION FOR DRIVING WHILE INTOXICATED.—No person shall be permitted as chauffeur to operate any motor vehicle on the public highway for profit without first having obtained a license therefor. Application for such license shall be made to and upon blanks furnished by the department of law enforcement, through the (county assessor) *sheriff*. The applicant must state therein that he is eighteen years of age or over, the trade name and motor power of the vehicle or vehicles he is capable of operating, and such other information as may be demanded by the department of law enforcement. The application shall be signed and verified by the applicant, shall show his post-office address, and the names and addresses of at least two responsible persons as references to the applicant's character and his ability to operate a motor vehicle."

"48-303. FEE FOR LICENSE—BADGE.—The fee for a chauffeur's license shall be two dollars, to be paid to and collected by the (County Assessor) *sheriff* (in the same manner as motor vehicle licenses) *as may be provided by law*. Upon presentation of the application and duplicate receipt showing the payment of the proper fee, the Department of Law Enforcement shall issue to such person a license, entitling such person to operate the motor vehicles named therein upon the public highways, which license must be in the possession of such chauffeur at all times when operating any motor vehicle and be exhibited to any officer when so demanded. The department shall also furnish to each licensed chauffeur a suitable badge of aluminum or other metal not more than two inches square or if circular not more than two and one-half inches in diameter, with the license number of such chauffeur in the center and surrounding such number the words 'licensed chauffeur for the State of Idaho.' This badge shall be worn by such chauffeur in a conspicuous place on his clothing at all times while operating a motor vehicle for profit upon the public highways. If such badge should be lost or destroyed, a duplicate thereof may be obtained from the Department of Law Enforcement upon payment of a fee of (fifty cents) *one dollar* therefor."

The lodestar for resolving these various views is legislative intent. (*Northern Pac. Ry. Co. v. Shoshone County, Idaho*, 63 Ida. 36, 116 P. (2d) 221.) "The cardinal

principle of statutory construction is to save and not to destroy." (*State v. Enking*, 59 Ida. 321, at 345, 82 P. (2d) 649.) "It is the duty of the court to give effect to a statute wherever it is possible to do so and keep within the terms of the language used." (*Anderson v. Rayner*, 60 Ida. 706, at 713, 96 P. (2d) 244.) The court "should assume that the legislature intended to enact a valid and constitutional law." (*Scandrett v. Shoshone County, Idaho*, 63 Ida. 46, 116 P. (2d) 225, at 227.) If the statutes as amended are sufficiently definite to enable the court to place thereon a reasonable construction and declare the legislative intent, they are not so ambiguous or unintelligible as to be unconstitutional for uncertainty. (*State v. Taylor*, 58 Ida. 656, at 664, 78 P. (2d) 125; *Idaho Gold Dredging Co. v. Balderston*, 58 Ida. 692, at 722, 78 P. (2d) 105; *Ada County v. Wright*, 60 Ida. 394, at 401, 92 P. (2d) 134.)

■ The legislature must have intended to clarify, strengthen, or make some change in the existing statutes. (*Anderson v. Rayner*, supra.)

■ The 1935 statute authorized applications to be made under sec. 16 directly to the Department of Law Enforcement or under sec. 17 through sheriffs, chiefs of police, or other persons appointed as examiners by the commissioner, and if examinations were made by the latter, their findings and recommendations were to be made to the department, and, if favorable, licenses were pursuantly issued under sec. 18 by the department. Sec. 16 provided that the examination should be made by the department "except as otherwise provided in this *section*." Sec. 17, not sec. 16, provided for an alternative examination, and this was perhaps in part the justification for the amendment by the addition of the words "or in this act". Though sec. 17 retained the provisions that the commissioner might appoint as examiners persons other than sheriffs, by the elimination from sec. 16 of the word "department" and in the second sentence of sec. 17 of "chief of police, or other person" no provision is made for accepting applications or fees or making written reports or recommendations to the department by anyone but a sheriff, and only he is authorized to examine; it would seem, therefore, that the legislature must have intended that applications, where examinations are required, are to be made only through or to sheriffs, and examinations may be conducted only by sheriffs.

Considering a cognate field, namely, the issuance of motor vehicle licenses, chap. 1, title 48, I.C.A., provides that application therefor must be made to and through the assessors of the various counties, and while the assessor by sec. 48-113 issues the registration plate, the registration card is by sec. 48-111 issued by the department. The reference to the motor vehicle registration act tends to support the thought that the legislature intended to bring the drivers' license act in conformity thereto, namely, that the application is made through a county officer and by him transmitted to the state department, and the license, as the driver's registration card on motor vehicles, is issued by the state department.

Examination of an applicant for a license without subsequent rejection or recommendation for license and collection of the fee would be fruitless. The delegation to the sheriff of examination, recommendation, collection, and forwarding of funds is so inconsistent with examination by some one else without connection with or completion of the other necessary steps leading to the refusal or issuance of license as to compel the conclusion the legislature intended to repeal the first sentence in sec. 17.

Since sec. 22 has not been amended, and renewals do not require examination unless ordered by the commissioner, the legislature thus indicated applications for renewals might be made either to sheriffs or directly to the department.

It is argued that the fees have been doubled, 50c and $2 going to the state, and 50c and $2 collected by the sheriff to be turned by him to the county as reimbursement to the county for the extra expense involved. It is also argued that if the application is made to the sheriff he collects 50c and $2 for the county and 50c and $2 for the state, whereas, if application is made to the department directly, a fee of only 50c and $2 is collected. While somewhat plausible, the contrary, affirmative indications lead to the conclusion that the legislature did not so intend. By failure to amend sec. 22, which, while applying only to renewals, is nevertheless to be considered and is germane to the point under consideration, the fees thereon noted remain at the prior amounts, and the entire context does not contain any distinction in the amount of the fee for renewals or initial

licenses. The titles[1] of the amendatory acts disclose no inkling of intention to increase the fees, and to so construe them would place a misleading construction thereon, doing violence to what any one reading the titles must have understood. (*Hailey v. Huston,* 25 Ida. 165, 136 P. 212.)

It would be wholly unreasonable to assume that the legislature intended that there should be one fee if the application is made to the department and double that amount if the application is made to the sheriff. It would be unfair and unequal and would penalize those drivers in the state living away from the capitol or where the department does not have a local officer.

Conceding that the increased duties required of sheriffs have substantially increased the expenses of their office, without more positive and direct declaration in the amendatory acts than appear, such is not sufficient reason to conclude that the legislature intended to increase the cost of these license fees to drivers. The provisions of the county budget law, sec. 30-1205, I.C.A., afford sufficient avenue of escape from lack of funds to finance the additional burden.

It may have been that the legislature considered that a saving would be made by reduction in the corresponding expenses in the Department of Law Enforcement, as we note that the appropriation for that department in 1941 was some $611, 264 as compared to $510,703 in 1943. While it might be considered unfair to make this saving as to

---

[1]"Relating to sheriffs fees: amending section 30-2703, Idaho Code Annotated to provide that sheriff receive and collect motor vehicle operator's and chauffeur's license fees; and declaring an emergency." (Title to Ch. 171, 1943 S.L.)

"Relating to the duties of the sheriff, amending section 30-1702, Idaho Code Annotated, defining duties of the sheriff, prescribing additional duties and providing that the sheriff work concurrently with the state police in regulating traffic upon the highways and in enforcing the law in relation to the motor vehicle laws of the state, and sell operator's and chauffeur's licenses; and declaring an emergency." (Title to Ch. 147, 1943 S.L.)

"Relating to motor vehicle operators' and chauffeurs' license fees and providing that all such fees collected in any county of the state by the sheriff's office be paid monthly by the county treasurer to the department of law enforcement of the state of Idaho, and declaring an emergency." (Title to Ch. 148, 1943 S.L.)

state expenditures at the expense of the counties, the same was a matter for the legislature to consider and over which they had plenary power. (*State v. Anderson,* 114 Kan. 297, 217 P. 327; *Commonwealth v. Tice,* 282 Pa. 595, 128 A. 506; *State v. Henry,* 224 Ala. 224, 139 So. 278.)

■ With regard to any violation hereby of either art. 18, sec. 8, of the Idaho constitution, or section 30-2601, I.C.A., these license fees are state money, even though collected by the sheriffs, and are not fees in contemplation of sec. 8, hence the transmittal by the treasurer would not be a transmittal of county moneys, but the sheriff and county treasurer would be merely conduits through which state funds collected by them for the state are transmitted to the Commissioner of Law Enforcement. Sec. 8, art. 18, therefore, does not apply. (*State v. Cleland,* 42 Ida. 803, 248 P. 831; *White v. Pioneer Bank & Trust Co.,* 50 Ida. 589, 298 P. 933; *Ada County v. Wright,* 60 Ida. 394, 92 P. (2d) 134.)

If the sheriff collects but one fee of 50c and $2 and retains this, then chap. 148 becomes of no force or effect; likewise, it would be inconsistent to say that the sheriff was to collect 50c and $2 and retain the same and collect 50c and $2 and transmit it to the state, as this would be in plain violation of chap. 148, which says that all money collected by the sheriff shall be transmitted through the treasurer to the department.

■ Since, by chap. 148, supra, the treasurer is to transmit monthly, the sheriff is likewise, by implication, required to pay these fees to the County Treasurer monthly. (*Fales v. Multnomah County,* 119 Ore. 127, 248 P. 151; *Pioneer Real Estate Co. v. City of Portland,* 119 Ore. 1, 247 P. 319.)

Justification thus exists for this construction, absent as to the first sentence in sec. 17, as amended, supra.

The statute is to be construed in accord with the manifest purpose of the lawmakers. (*Turner v. Roseberry Irr. Dist.,* 33 Ida. 746, 198 P. 465.)

■ No duty to which he was constitutionally entitled is taken from the sheriff and given to another officer; hence, he suffered no unconstitutional deprivation.

"It will be conceded the legislature may prescribe duties in addition to those prescribed by the constitution, provided, those prescribed by the legislature do not conflict with the

duties either expressly or impliedly prescribed by the constitution. But under our decision in *Gilbert v. Moody*, supra, we would have, by the enactment of the 1939 statute, two auditors, one a constitutional officer and the other statutory." (*Wright v. Callahan*, 61 Ida. 167, at 178, 99 P. (2d) 961.)

(*State v. Malcom*, 39 Ida. 185, 226 P. 1083.)

The imposition of new duties is authorized by art. 18, sec. 11, Idaho constitution. (*Merrill v. Phelps*, 52 Ariz. 526, 84 P. (2d) 74.) Indeed, this sentence in sec. 6 of art. 18 of the Idaho constitution must have contemplated that county officers might be called to handle many different kinds of funds, foreshadowing duties other than extant in the 1887 Revised Statutes or the common law:

"The legislature shall provide for the strict accountability of county, township, precinct and municipal officers for all fees which may be collected by them, and for all *public* and municipal *moneys* which may be paid to them, *or officially come into their possession*." [Emphasis ours.]

The amendments thus construed lead to this result: That applications for chauffeurs' licenses are now not made to the assessor, but are made as for instruction or operators' licenses; that applications for renewals may be made either to the sheriff or to the department; that applications where examinations are to be made may be made to the sheriffs only; that the sheriffs are to cover into the county treasury the amounts collected by them for drivers' licenses monthly, to be thence transmitted to the department; that the fees remain as in the 1935 statute, namely, 50c and $2.

It follows the writ should be made permanent.

Holden, C.J., Ailshie, Budge, and Dunlap, JJ., concur.